UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DeANDRE CLARK,

Plaintiff,

vs.

Case No.
Hon.
Mag. Judge

DP WORLD CONTRACT LOGISTICS US INC.,

Defendant.
_______________________________/

James C. Baker (P626668)
Attorney for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

_______________________________/

# COMPLAINT AND JURY DEMAND

Plaintiff DeAndre Clark by his attorney, James C. Baker of Sterling Attorneys at Law, P.C., for his Complaint and Jury Demand against Defendant DP World Contract Logistics Inc., submits:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is an individual residing in the City of Detroit, Wayne County, Michigan.

2. Defendant is corporation incorporated under the laws of the State of Michigan, has a place of business in Auburn Hills, Oakland County, Michigan, with Plaintiff working out of its location at Trenton, Wayne County, Michigan.

3. Plaintiff was employed by Defendant between March 24, 2021 and November 4, 2024.

4. Defendant is an employer as defined in Title VII of the Civil Rights Act of 1964, 42 USC 2000e-16 (Title VII) and the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq.*

5. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

6. Venue is also proper in this district and division under 28 USC 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district and division.

**EEO/EEOC ACTION**

7. Plaintiff timely filed charges of religious discrimination and refusal of a religious accommodation based on a sincerely-held religious belief with the Equal Employment Opportunity Commission (EEOC).

8. On March 12, 2025, the EEOC issued is Determination of Charge and Notice of your Right to Sue.

9. Plaintiff received the Determination of Charge and Notice of Right to Sue by emailed notice and the EEOC Portal on March 12, 2025.

10. This Complaint is timely filed within 90 days of the date of issuance of Plaintiff's Right to Sue.

## GENERAL ALLEGATIONS

11. On March 24, 2021, Plaintiff began working for Defendant as Operations Supervisor.

12. On or around February 16, 2022, Plaintiff made a request for a religious accommodation, namely not to work on Saturday, which he recognized as the Sabbath.

13. Recognizing Saturday as the Sabbath was consistent with Plaintiff's sincerely-held religious beliefs.

14. Defendant has honored the religious accommodations of other employees of different religions, including honoring Sabbath and other recognized religious days off of work.

15. Defendant denied Plaintiff's request for a religious accommodation.

16. Defendant impermissible inquired of his sincerely-held religious belief in making that denial.

17. After he made the request for religious accommodation, Plaintiff was ostracized by his peers and management; he was treated differently than others because of his religious beliefs and requested accommodation.

18. On February 21, 2024, Plaintiff reported a claim of race/color discrimination by his Shift Manager.

19. Plaintiff is African American/Black.

20. The report was never investigated by Defendant despite policy and duty requiring the investigation.

21. Following his report, Plaintiff was subjected to increased scrutiny.

22. In comparing same job duties, responsibilities, and work performance, Plaintiff's Caucasian/White coworkers were not subjected to similar and/or increased scrutiny because they were Caucasian/White.

23. On March 29, 2024, Plaintiff made another request for religious accommodation based on a sincerely-held religious belief, namely not to work on Saturday, the day he recognized as the Sabbath.

24. The request was denied and Plaintiff was scheduled to work on March 30, 2024, a Saturday, which violated his sincerely-held religious beliefs.

25. On August 21, 2024, Plaintiff again reported a claim of discrimination based on race/color.

26. Plaintiff had been subjected to increased scrutiny and criticism because of his race/color compared to his similarly-situated Caucasian/White coworkers.

27. This time Plaintiff met with Defendant's representative.

28. A Human Resources representative was invited to participate in the meeting, but failed and/or refused to attend.

29. During the meeting Plaintiff requested to write out his complaints, but was refused by Defendant's representative.

30. Thereafter the discussion included Defendant's representative asking Plaintiff if he harbored any ill-will toward his Caucasian/White Shift Manager, to which Plaintiff responded in the negative, and that he performed all duties required of him as instructed and requested.

31. Defendant's representative condescendingly asked then why Plaintiff thought there was a problem, to which Plaintiff responded it was because the Shift Manager didn't like him because he is Black, and treats him differently/worse than the Caucasian/White Supervisors.

32. Following this meeting no reported claim was investigated by Defendant.

33. On September 27, 2024, Plaintiff was given a negative performance review citing "lack of communication."

34. This was the first and only negative performance review in his time employed with Defendant.

35. Plaintiff's communication was the same, if not better since joining the company.

36. The "communication issue" arose after his then most-recent report of face discrimination.

37. On Octobe4 7, 2024, Plaintiff was suspended for a safety investigation.

38. Plaintiff was 100% compliant with that safety investigation.

39. On October 14, 2024, following a one-week extension, Plaintiff's suspension was extended indefinitely pending another purported safety investigation to which Plaintiff was also 100% compliant.

40. On November 4, 2024, Plaintiff was terminated following false safety allegations that were never truly investigated.

41. During his employment, Plaintiff engaged in protected activity and reported the claims of disparate treatment and discrimination he experienced.

42. In response, Plaintiff was retaliated against by being scrutinized unfairly compared to Caucasian/White Supervisors who had not made claims of discrimination.

**COUNT I**
**RACE DISCRIMINATION AND**
**RETALATION IN VIOLATION OF 42 USC 1981**

43. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-42, as if fully restated herein.

44. At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of 42 USC 1981.

45. Defendant engaged in discriminatory and retaliatory employment practices based on race.

46. Defendant treated Plaintiff, an African-American/Black employee differently, and subjected Plaintiff to unwarranted scrutiny, suspension, and termination with race/color being a motivating factor.

47. Defendant, by and through its agents and employees, was predisposed to discriminate against Plaintiff on the basis of race/color, and acted in accordance with that predisposition.

48. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

49. Defendant's actions were retaliatory for Plaintiff complaining he was treated differently and worse by a Caucasian Shift Manager because of his race/color.

50. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, he was selected for pretextual suspension and he was terminated.

51. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, he has suffered injuries and damages, including, but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and

emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful employment.

52. Defendant's willful conduct against Plaintiff justifies punitive damages as allowed by statute.

**COUNT II**
**RELIGION DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

53. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-52, as if fully restated herein.

54. At relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000-e *et seq.*

55. Plaintiff made a reasonable request for a religious accommodation based on a sincerely-held religious belief; namely, to not work on Saturday, his observed Sabbath.

56. Defendant had honored and accommodated other employees' religious observances, including honoring workday limitations for Sabbath and other observances.

57. Defendant's treatment and discipline of Plaintiff, as described herein, was based, at least in part, on unlawful consideration of his religion.

58. Defendant by its agents and decisionmakers was predisposed to discriminate on the basis of religion, and acted in accordance with that predisposition.

59. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

60. Plaintiff was qualified for his position.

61. Defendant's management and/or supervisory employees discriminated and retaliated against Plaintiff with respect to employment terms, conditions, and privileges due to Plaintiff's religious beliefs.

62. Defendant's management and/or supervisory employees engaged in a pattern and practice of workplace behaviors motivated against Plaintiff because of his religious beliefs.

63. Defendant impermissibly inquired into Plaintiff's sincerely-held religious beliefs.

64. Defendant terminated Plaintiff after over years of loyal and excellent service.

65. Plaintiff's religion was a factor in Defendant's decision to fire him.

66. Defendant's treatment and termination of Plaintiff, as described above, was based, at least in part, on unlawful consideration of religion.

67. Defendant, by its agent(s), was predisposed to discriminate and retaliate on the basis of religion, and acted consistent with that predisposition.

68. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

69. Defendant retaliated for Plaintiff complaining of discrimination.

70. Defendants willfully violated Plaintiff's statutory rights.

71. Defendant's alleged reason for investigation, suspending, and terminating Plaintiff was a pretext for religious discrimination and retaliation.

72. Defendant's discrimination and retaliation denied Plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 41 USC 2000e *et seq*.

73. Defendant's willful conduct against Plaintiff justifies punitive damages as allowed by statute.

**COUNT IV**
**RACE AND RELIGION DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

74. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-73, as if fully restated herein.

75. Plaintiff was qualified for his position.

76. Defendant discriminated and retaliated against Plaintiff with respect to employment terms, conditions, and privileges due to Plaintiff's race and religious beliefs and practices.

77. Defendant engaged in a pattern and practice of race and religion discrimination and retaliation.

78. Defendant's management and/or supervisory employees engaged in adverse conduct toward Plaintiff using racial and religious workplace behaviors.

79. Defendant terminated Plaintiff after years of excellent service.

80. Plaintiff's race was a factor in Defendant's decision to fire him.

81. Plaintiff's sincerely-held religious beliefs and practices were factors in Defendant's decision to fire him.

82. Defendant's alleged reason(s) for terminating Plaintiff was a pretext for race and religion discrimination and retaliation.

83. Defendant's discrimination and retaliation denied Plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq*.

84. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to damages.

WHEREFORE, Plaintiff DeAndre Clark by and through counsel, James C. Baker of Sterling Attorneys at Law, P.C., respectfully requests that this Honorable Court enter Judgment in his favor against Defendant, for the following damages:

A. compensation for his loss of wages and fringe benefits;

C. compensation based on his earning potential;

D. emotional distress and other non-economic damages;

E. consequential, compensatory, punitive, and liquidated damages;

F. statutory attorney fees.

**JURY DEMAND**

Plaintiff DeAndre Clark by his attorney James C. Baker of Sterling Attorneys at Law, P.C., makes his demand for a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/James C. Baker

James C. Baker (P62668)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

Dated: June 10, 2025